*MMA*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE LEINENWEBER

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) MAGISTRATE JUDGE FUENTES |
| v. | ) No. **19CR    638** |
| | ) |
| RHYS PAREJA, | ) Violations: Title 18, United States |
| JAMAL RANSFORD FRIMPONG, | ) Code, Sections 1343 and 1623(a) |
| ADAM MURRELL, | ) |
| EPAMINONDAS KARVELAS, | ) |
| NIRMAL VAGHASIYA, and | ) |
| DAVID TODD HOWARD | ) |

**FILED**

**COUNT ONE**

AUG 08 2019

The SPECIAL JULY 2018 GRAND JURY charges:

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1.    At times material to this indictment:

a.    Defendant RHYS PAREJA, directly and through entities Rhy-Hab Construction LLC, Rhy-Invest Inc., Rhy-Mix Productions, and Moving Up, Inc., purchased, renovated, and sold residential properties in Chicago, Illinois.

b.    Defendant JAMAL RANSFORD FRIMPONG, directly and through RJF Investment & Construction Incorporated, purchased, renovated, and sold residential properties in Chicago, Illinois.

c.    Defendant ADAM MURRELL was a loan officer employed by Integra Mortgage, a mortgage brokerage.

d.    Defendant EPAMINONDAS KARVELAS purchased and sold residential properties in Chicago, Illinois.

e. Defendant NIRMAL VAGHASIYA, directly and through Moving Up, Inc., purchased, renovated, and sold residential properties in Chicago, Illinois.

f. Argent Mortgage, Fieldstone Mortgage, Midwest Funding, Universal Mortgage Corporation, Professional Mortgage Partners, Inc., United Midwest Savings Bank, Suntrust Mortgage, Inc., Draper & Kramer Mortgage Corporation d/b/a 1st Advantage, Polaris Home Funding Corporation, EverBank, and MetLife Home Loans, a division of MetLife Bank, N.A., were lenders that funded mortgage loans.

g. United Midwest Savings Bank, EverBank, Polaris Home Funding Corporation, and MetLife Home Loans, a division of MetLife Bank, N.A., were financial institutions, specifically, mortgage lending businesses that financed and refinanced debt secured by an interest in real estate and whose activities affected interstate commerce.

h. Lenders required mortgage loan applicants to provide truthful information, including truthful information about: the applicant's citizenship and/or immigration status, financial condition, employment, income, assets, liabilities, and rental history; the source of the earnest money and down payment; the sales price and value of the property; the intended use of the property; the distribution of the loan proceeds; and any payments to the buyers, sellers, loan officers, and real estate agents, which information was material to the lenders' approval, terms, and funding of the loan.

i.      Lenders sold mortgage loans to other lenders and institutions. Lenders disclosed that the mortgage loans could be sold and the likelihood that the mortgage loans would be sold. The information provided in the loan application materials, including the applicant's citizenship and/or immigration status, and financial condition, the source of the earnest money and down payment, the sales price and value of the property, the intended use of the property, the distribution of the loan proceeds, and any payments made to the parties, loan officers, and real estate agents, was material to the successors' decisions to purchase the mortgage loans.

j.      The United States Department of Housing and Urban Development ("HUD"), through the Federal Housing Administration ("FHA"), provided insurance guaranteed by the United States government to private lenders for certain mortgage loans provided to qualified borrowers. The information contained in loan application materials, including the information described in the preceding subparagraph, was material to the FHA's decision to insure mortgage loans.

2.      Beginning in or around December 2006 and continuing through in or around January 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

RHYS PAREJA,<br>
JAMAL RANSFORD FRIMPONG,<br>
ADAM MURRELL,<br>
EPAMINONDAS KARVELAS,<br>
NIRMAL VAGHASIYA, and<br>
DAVID TODD HOWARD,

3

defendants herein, along with others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud lenders and to obtain money and property from lenders by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme affected a financial institution and is further described below.

3.      It was part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, ADAM MURRELL, EPAMINONDAS KARVELAS, NIRMAL VAGHASIYA, and DAVID TODD HOWARD, along with others, fraudulently caused lenders to issue mortgage loans in a total amount of at least approximately $3,755,188, by making and causing to be made materially false representations and by concealing material facts in documents submitted to the lenders.

4.      It was further part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, NIRMAL VAGHASIYA, and others, referred prospective buyers to mortgage loan originators, including defendant ADAM MURRELL, to assist the buyers in fraudulently applying for mortgage loans.

5.      It was further part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, ADAM MURRELL, EPAMINONDAS KARVELAS, NIRMAL VAGHASIYA, and others, submitted and caused to be submitted to lenders documents, including loan applications and supporting

documents, HUD-1 Settlement Statements, and real estate contracts, that were materially false and fraudulent in one or more ways, including:

      a.     falsely stating that the buyer(s) intended to occupy the property as a primary residence;

      b.     misrepresenting and concealing the true source of the earnest money and down payment funds for the buyer(s);

      c.     misrepresenting the income, employment, and assets of the buyer(s);

      d.     misrepresenting and concealing payments to buyer(s) and others who were involved in and facilitated the property sale;

      e.     misrepresenting and concealing the citizenship and immigration status of the buyer(s);

      f.     concealing material liabilities of the buyer(s), including other mortgage loans for which the buyer(s) had an obligation to pay; and

      g.     misrepresenting the value and sales price of the property.

6.     It was further part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, and NIRMAL VAGHASIYA recruited, and caused to be recruited, individuals to serve as buyers to purchase properties, knowing that fraudulent loan application materials would be submitted to lenders on behalf of those individuals.

7.     It was further part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, NIRMAL VAGHASIYA, and others working with

them and at their direction, informed prospective buyers that they would not have to use their own money for down payments, and that they would be paid money out of the sales proceeds after having purchased properties, knowing those payments would be concealed from lenders.

8.    It was further part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, and EPAMINONDAS KARVELAS created and caused to be created false documents, including false bank account statements and gift letters, in order to support false representations in documents submitted to lenders.

9.    It was further part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, ADAM MURRELL, NIRMAL VAGHASIYA, and others, facilitated buyers' fraudulent purchases of properties in and around Chicago, Illinois, including: (a) 3503 South 52nd Court, Cicero, Illinois; (b) 4517 South Lacrosse Avenue, Chicago, Illinois; (c) 7014 South Talman Avenue, Chicago, Illinois; (d) 11334 South Church Street, Chicago, Illinois; (e) 2239 North Kilpatrick Avenue, Chicago, Illinois; (f) 1922 South 12th Avenue, Maywood, Illinois; (g) 2918 North McVicker Avenue, Chicago, Illinois; (h) 2921 East 96th Street, Chicago, Illinois; (i) 6149 South Rockwell Street, Chicago, Illinois; (j) 1242 South Tripp Avenue, Chicago, Illinois; (k) 8129 South Muskegon Avenue, Chicago, Illinois; (l) 5309 South Bishop Street, Chicago, Illinois; (m) 5720 South Ada Street, Chicago, Illinois; (n) 7050 South Elizabeth Street, Chicago, Illinois; (o) 1523 South Kostner Avenue, Chicago, Illinois;

(p) 5416 South Hermitage Avenue, Chicago, Illinois; (q) 5518 South Loomis Boulevard, Chicago, Illinois; and (r) 5007 South Bishop Street, Chicago, Illinois.

### 5309 South Bishop Street

10.    It was further part of the scheme that, in or around August 2009, defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, ADAM MURRELL, and NIRMAL VAGHASIYA, submitted, and caused to be submitted, to a lender loan documents to finance Buyer A's purchase of the Bishop Street property, knowing that the documents contained material false information, including Buyer A's assets, the source of the down payment, and whether Buyer A intended to occupy the Bishop Street property as his primary residence.

11.    It was further part of the scheme that defendant JAMAL RANSFORD FRIMPONG provided Buyer A's down payment for the Bishop Street property.

### 1523 South Kostner Avenue

12.    It was further part of the scheme that, in or around August 2009, defendants JAMAL RANSFORD FRIMPONG, ADAM MURRELL, EPAMINONDAS KARVELAS, and DAVID TODD HOWARD submitted, and caused to be submitted, to a lender loan documents to finance HOWARD's purchase of the Kostner Avenue property, knowing that the documents contained material false information, including HOWARD's assets, the source of the down payment, and whether HOWARD intended to occupy the Kostner Avenue property as his primary residence.

13.    It was further part of the scheme that defendants JAMAL RANSFORD FRIMPONG, EPAMINONDAS KARVELAS, and DAVID TODD HOWARD created,

and caused to be created, false bank statements for HOWARD, knowing those statements would be submitted to a lender in support of HOWARD's loan application.

14.     It was further part of the scheme that defendant JAMAL RANSFORD FRIMPONG provided HOWARD's down payment for the Kostner Avenue property.

### 5416 South Hermitage Avenue

15.     It was further part of the scheme that, in or around November 2009, defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, and ADAM MURRELL submitted, and caused to be submitted, to a lender loan documents to finance Buyer B's purchase of the Hermitage Avenue property, knowing that the documents contained material false information, including Buyer B's assets, the source of the down payment, and whether Buyer B intended to occupy the Hermitage Avenue property as his primary residence.

16.     It was further part of the scheme that defendant JAMAL RANSFORD FRIMPONG created, and caused to be created, false bank statements for Buyer B, knowing those statements would be submitted to a lender in support of Buyer B's loan application.

### 5518 South Loomis Boulevard

17.     It was further part of the scheme that, in or around November 2009, defendants JAMAL RANSFORD FRIMPONG and ADAM MURRELL submitted, and caused to be submitted, to a lender loan documents to finance Buyer C's purchase of the Loomis Boulevard property, knowing that the documents contained material false information, including Buyer C's assets, the source of the down payment, and

whether Buyer C intended to occupy the Hermitage Avenue property as his primary residence.

18.     It was further part of the scheme that defendants RHYS PAREJA, JAMAL RANSFORD FRIMPONG, ADAM MURRELL, EPAMINONDAS KARVELAS, NIRMAL VAGHASIYA, and DAVID TODD HOWARD did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

19.     On or about October 30, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

RHYS PAREJA,<br>
JAMAL RANSFORD FRIMPONG,<br>
ADAM MURRELL, and<br>
NIRMAL VAGHASIYA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transmission of approximately $359,962 through the Fedwire system from Polaris Home Funding Corporation's account at Comerica Bank to Specialty Title Services, Inc.'s account at Signature Bank, to fund a loan to Buyer A to purchase 5309 South Bishop Street, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JULY 2018 GRAND JURY further charges:

1.      Paragraphs 1 through 18 of Count One are incorporated here.

2.      On or about August 10, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMAL RANSFORD FRIMPONG,
ADAM MURRELL,
EPAMINONDAS KARVELAS, and
DAVID TODD HOWARD,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transmission of approximately $290,798 through the Fedwire system from Polaris Home Funding Corporation's account at National City Bank to AMAXX Title Services LLC's account at JP Morgan Chase Bank, to fund a loan to HOWARD to purchase 1523 South Kostner Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL JULY 2018 GRAND JURY further charges:

1.     Paragraphs 1 through 18 of Count One are incorporated here.

2.     On or about August 16, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

RHYS PAREJA,
JAMAL RANSFORD FRIMPONG, and
ADAM MURRELL,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, namely, an email from INDIVIDUAL A, using the email address xxxxxxxxxxxx@yahoo.com, processed through Yahoo servers located outside Illinois, to MURRELL, using the email address adam@integramtg.com, which email included a statement concerning the appraisal for 5416 South Hermitage Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL JULY 2018 GRAND JURY further charges:

1.      Paragraphs 1 through 18 of Count One are incorporated here.

2.      On or about January 28, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JAMAL RANSFORD FRIMPONG and
ADAM MURRELL,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transmission of approximately $176,525 through the Fedwire system from Great Lakes Title Company's account at Harris Bank to RJF Investment & Construction Incorporated's account at JP Morgan Chase Bank, as defendant FRIMPONG's proceeds from the sale of 5518 South Loomis Boulevard, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL JULY 2018 GRAND JURY further charges:

1.     At times material to this indictment:

      a.     The SPECIAL DECEMBER 2016 GRAND JURY was conducting an investigation of possible violations of federal criminal law concerning a scheme to defraud a financial institution, namely Polaris Home Funding Corporation, in connection with the purchase of 1523 South Kostner Avenue, Chicago, Illinois.

      b.     Defendant DAVID TODD HOWARD applied for a mortgage loan in the amount of approximately $294,566 to fund his purchase of the Kostner Avenue property.

      c.     Defendant DAVID TODD HOWARD'S mortgage loan application indicated that no part of the down payment was borrowed.

      d.     The HUD-1 Settlement Statement for defendant DAVID TODD HOWARD's purchase of the Kostner Avenue property indicated that the borrower, HOWARD, paid $10,500 at closing. HOWARD certified in an addendum to that Settlement Statement that he was not "paid or reimbursed for any of the cash down payment."

      e.     The following matter, among others, was material to the Grand Jury's investigation: whether DAVID TODD HOWARD was the source of the down payment for the mortgage loan for the Kostner Avenue property.

2.    On or about July 18, 2017, at Chicago, in the Northern District of

Illinois, Eastern Division,

### DAVID TODD HOWARD,

defendant herein, was placed under oath prior to testifying before the SPECIAL

DECEMBER 2016 GRAND JURY and knowingly made a false material declaration

during his testimony by responding to questions as follows:

Q:    It indicated that the borrower, you, was going to bring
       approximately $10,889.92 to the closing?

A:    Uh-huh.

Q:    Did you bring that much money as a down payment for the
       property, sir?

A:    If that's what was needed, yes.

Q:    Do you recall where you obtained the money to pay for the
       down payment on this property?

A:    No, I do not.

Q:    Was it your own money?

A:    Yes.

Q:    Did you borrow it from anyone else?

A:    No.

*        *        *

Q:    And it says that "I certify that I have not been paid or reimbursed
       for any of the cash down payment," Do you see that?

A:    Yes.

Q:    Is it your testimony that that was accurate at the time?

A:    Yes.

Whereas, in fact and as HOWARD knew, JAMAL RANSFORD FRIMPONG provided HOWARD with a cashier's check in the amount $10,500, which was drawn on an account held by FRIMPONG's company, RJF Investment & Construction Incorporated, and used as the down payment for HOWARD's purchase of the Kostner Avenue property;

In violation of Title 18, United States Code, Section 1623(a).

## Forfeiture Allegation

The SPECIAL JULY 2018 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, affecting a financial institution, as set forth in this indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 982(a)(2)(A).

2.     The property to be forfeited includes, but is not limited to a personal money judgment in the amount of approximately $2,831,110.

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

16